UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KYMBERLIE BARNES,

      Plaintiff,

    v.                            CASE NO. 2:07-CV-12141
                                    JUDGE NANCY G. EDMUNDS

HARTFORD LIFE AND ACCIDENT          MAGISTRATE JUDGE PAUL KOMIVES
INSURANCE COMPANY, a Connecticut
corporation,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR ENTRY OF
JUDGMENT (docket #15) and PLAINTIFF'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD (docket #12)**

I.     RECOMMENDATION ............................................................... 1
II.    REPORT ......................................................................... 1
    A.    *Procedural Background* ......................................................... 1
    B.    *Background* ................................................................. 2
    C.    *Legal Standard* ............................................................. 10
    D.    *Analysis* .................................................................. 12
    E.    *Conclusion* ................................................................ 23
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ..................................... 23

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny plaintiff's motion for judgment on the

administrative record (docket #12) and should grant defendant's motion for entry of judgment

(docket #15).

II.    REPORT:

A.    *Procedural Background*

       Plaintiff Kymberlie Barnes commenced this action on May 17, 2007, and filed an amended

complaint on July 31, 2007. Plaintiff seeks relief pursuant to section 502 of the Employee

Retirement Income Security Act, 29 U.S.C. § 1132. Plaintiff alleges that defendant, Hartford Life

and Accident Insurance Company ("Hartford" or "defendant"), wrongfully denied her long term disability benefits. The matter is currently before the Court on the parties' cross-motions for judgment on the administrative record. On November 7, 2007, plaintiff filed her motion for judgment on the administrative record, and on November 13, 2007, defendant filed its motion for judgment affirming the administrator's denial of benefits. The parties have filed responses and replies in connection with each of the motions for judgment on the record. Briefly stated, plaintiff argues that the administrator's decision to terminate her benefits was arbitrary and capricious because Hartford has a conflict of interest, relies on selective portions of the medical record, and ignores the medical evidence in support of her claim. Defendant contends that its decision to terminate benefits was not arbitrary and capricious in light of the plan terms and the evidence in the record.

B.    *Background*

Plaintiff was employed by USA Jet Airlines, Inc., as a flight follower. Administrative Record ("AR"), at 00355. By virtue of her employment, plaintiff was covered under the USA Jet Airlines, Inc. Group Disability Income Insurance Plan ("the Plan"). The Plan designates USA Jet Airlines as the Administrator, and further delegates "sole discretionary authority" to Hartford[1] "to determine [the employee's] eligibility for and entitlement to benefits under the Plan and to interpret the terms and provisions of any insurance policy issued in connection with the Plan." AR, at 00003. Hartford is also designated as the payor of benefits under the Plan. *See id*. The Plan, in turn, is

---

[1]The plan was issued by CNA Group Life Assurance Company, a subsidiary of Continental Casualty Company ("CCC"). The plan actually designates CCC as the discretionary authority for determining eligibility for benefits. On November 30, 2003, Hartford purchased 100% of the stock of CNA Group from CCC. Because Hartford is the successor in interest to CCC, for simplicity I refer solely to Hartford throughout this Report.

insured by Policy No. SR-83112219 ("the Policy"), issued on July 1, 1999. The Policy likewise

provides that Hartford has the discretionary authority to determine eligibility for benefits and to

interpret the terms and conditions of the plan. AR, at 00015, 00028. The Policy defines "disability"

thusly:[2]

> "*Disability*" means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1. continuously unable to perform the *Material and Substantial Duties of Your Regular Occupation*; and
>
> 2. not working for wages in any occupation for which You are or become qualified by education, training or experience.
>
> After the *Monthly Benefit* has been payable for 24 months, "*Disability*" means that *Injury* or *Sickness* causes physical or mental impairment to such a degree that *You* are:
>
> 1. continuously unable to engage in any occupation for which *You* are or become qualified by education, training and experience; and
>
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

AR, at 00010, 00016.[3] The Plan provides that the monthly benefit shall be reduced by the amount

of any disability benefits paid under the Social Security Act, and that the Administrator may provide

assistance to the claimant in applying for and securing such benefits. AR, at 00018, 00022.

Disability arising from a mental disorder is excluded from coverage beyond 24 months after the

---

[2]The plan creates two classes of employees, to which different definitions and provisions apply. Class 1 consists of "[a]ll Active Full-Time Pilot Employees, excluding Pilots who are *Actively at Work* for the Employer." Class 2 consists of "[a]ll Active Full-Time Employees, excluding Pilots who are *Actively at Work* for the Employer." AR, at 00013. The parties do not dispute that plaintiff was a Class 2 employee, and where the Plan differs with respect to the two classes, all references to the Plan in this Report are to those portions governing Class 2 employees.

[3]The italicized words and phrases are further defined in the plan. AR, at 00026.

elimination period.  AR, at 00020.  The Plan requires an employee to file a timely notice of claim and written proof of loss.  AR, at 00023.  The Plan also requires an employee to submit proof of disability including, *inter alia*, proof that the employee is receiving appropriate and regular care, objective medical findings supporting the claim of disability, and information regarding the extent of the disability.  *See id*.  The employee is also required, upon request, to provide proof of continuing disability.  *See id*.

On October 12, 2001, plaintiff injured her back as a result of a fall in an airport parking lot. On April 29, 2002, defendant informed plaintiff that her claim for long term disability benefits had been approved, based on a disability date of October 26, 2001.  Payment commenced on April 23, 2002, after the 180 day elimination period set forth in the Plan.  AR, at 1256.  The letter indicated that plaintiff's benefits under the plan were payable for 24 months based on the finding that she was disabled from her own occupation.  After that time, the letter advised, plaintiff would have to show that she was disabled from any occupation for which she was qualified.  *See id*.  Specifically, the letter indicated:

> The information in our file at this time indicates you are currently unable to perform the duties of your occupation.  However, the information does not support your inability to perform duties of another occupation for which you have training, education or experience.  Benefits will only be considered for a maximum of 24 months as long as you continue to meet the policy's definition of total disability.

AR, at 1257.  With defendant's assistance, plaintiff sought disability benefits from the Social Security Administration.  AR, at 01795-01837.  Plaintiff was awarded disability benefits, which were offset against her disability insurance payments from defendant.

On March 19, 2005, plaintiff completed a disability claim form.  Plaintiff indicated that she could perform no duties at all, could not walk or bend, could not do household chores, and had not

attempted any employment since the onset of her disability. AR, at 00685-86. On March 24, 2005, Dr. Larry White, plaintiff's primary treating physician, completed the physician's portion of the form. Dr. White indicated that plaintiff became exhausted after five to ten minutes of activity and that she need to sit or lay down throughout the day. Dr. White indicated that plaintiff could not drive, was at times confined to her bed and not ambulatory, and would be totally disabled for five to seven years. AR, at 00686-87.

On January 10, 2006, plaintiff's disability claim was referred to defendant's Special Investigations Unit because of suspicions regarding the duration of plaintiff's disability and the veracity of the physician's disability form. AR, at 01738. As part of this investigation, defendant hired Veracity Research Company to investigate plaintiff's daily activities. On January 16, 2006, an investigator observed and videotaped plaintiff entering a health club. She exited several hours later carrying clothes in her arm. It also appeared that plaintiff had showered. She then drove home. When she returned home, she squatted and bent at the waist to look under her vehicle. AR, at 00660-61, 01880. To discuss the discrepancies between the video footage and plaintiff's disability claim form, Investigator Wayne Spencer scheduled a meeting with plaintiff for April 10, 2006, at her home. Plaintiff was not home at the scheduled time, and the meeting was rescheduled for April 12. On that date, plaintiff indicated that she was totally disabled due to chronic pain and fatigue. Plaintiff reported that she cannot perform any physical activity without experiencing total exhaustion, and described her typical day as laying on the couch. AR, at 00867-69. Plaintiff provided a continuing disability statement during the interview, indicating that she: cannot perform any physical activities without becoming exhausted; cannot bend forward; has difficulty sleeping; is not involved in any physical activities to improve her condition; must use a walker to ambulate;

cannot stand for five minutes without experiencing severe pain in her neck, shoulders, arms, back, hips, and legs; cannot reach; has no muscle strength in her legs; cannot sit for more than five minutes without experiencing severe pain and cramping in her back and neck; cannot bathe herself; and has not been involved in any social or recreational activities since she filed her disability claim. AR, at 00869.

Johanna Cobb, a Medical Case Manager and Registered Nurse, reviewed the file relating to plaintiff's disability claim, including Dr. White's medical records through March 2006, the video surveillance, and the report of Investigator Spencer. In a June 9, 2006, letter to Dr. White, Cobb indicated that the information on file suggested that plaintiff "is being medically managed and remains essentially functional and independent." AR, at 00633. The letter explained that defendant was "attempting to move forward with an Employability Assessment that we might identify occupations for which Ms. Barnes may be qualified to perform . . . which require only a seated position." *Id.* Cobb provided Dr. White with a copy of the video surveillance. The letter concluded, based on the video evidence and the inconsistencies in plaintiff's claims:

> Therefore, as of today our Assessment will conclude that Ms. Barnes is capable of performing in a full-time seated-type function, which will require only brief or intermittent periods of walking/standing and allows for full use of the upper extremities, such as with fingering and handling and typing. Lifting/carrying will be limited to 0-10 pounds on a frequent basis. Sitting for the majority of the workday will be required, however, afforded will be the opportunity to change body positions/postures as needed for comfort (by walking, standing, or moving about).

AR, at 00634. The letter then asked: "Do you have any adjustments or additional limitations/restrictions to our Assessment?" *Id.* Dr. White checked "No," and returned the letter on June 12, 2006. *See id.*

On June 19, 2006, an Assessment of Employability was completed to identify alternative

occupations for which plaintiff would be qualified based on her education, training, and experience, and consistent with the functional limitations identified in Cobb's June 9, 2006, letter. The assessment concluded that plaintiff possessed the skills necessary to perform sedentary semi-skilled work, and that based on her age, education, work history, location, functional limitations, and pre-disability salary, plaintiff was capable of performing alternative occupations such as routing clerk, assignment clerk, and appointment clerk. AR, at 00599-00629.

On July 7, 2006, defendant informed plaintiff that it was terminating her long term disability benefits. The letter explained to plaintiff that, to remain eligible for benefits, she had to show that she was unable to perform any work, not just her past work. The letter also informed plaintiff that its decision was based on: (1) the March 24, 2005, claim form prepared by Dr. White; (2) plaintiff's March 19, 2005, claim form; (3) the video surveillance; (4) the continuation disability statement taken by Investigator Spencer on April 12, 2006; (5) medical records from Dr. White and the Henry Ford Pain Clinic dated April 2006 through April 2006; (6) Dr. White's June 12, 2006, response to Cobb's letter; and (7) the June 19, 2006, assessment of employability. After summarizing this evidence, the letter concluded that "the medical, investigative and vocational information on file no longer supports that you are totally disabled from any occupation. In addition, your physician did not provide any additions or adjustments to our assessment that you retain the capacity for a seated type function. As a result, you no longer satisfy the definition of disability according to the policy and your benefits have been terminated." The letter ended by advising plaintiff of her appeal rights. AR, at 00405-07.

Plaintiff submitted an appeal on January 26, 2007, arguing that the medical evidence supported her claim of disability. AR, 01278-01313. In support of her appeal, plaintiff submitted

Dr. White's affidavit. Dr. White indicated that his March 24, 2005, claim form had incorrectly listed a cardiac condition and had improperly described a five to seven year expected disability time from due to a communication error, but that he agreed with everything else in the claim form. Dr. White also explained that he had checked the "no" box on Cobb's letter because he thought he was being asked whether he had any additional comments on the surveillance videotape, not whether he agreed or disagreed with the functional limitation assessment set forth by Cobb. Finally, Dr. White opined that plaintiff was totally disabled from performing any occupation. AR, at 01361-65.

In connection with the appeal, defendant referred the matter to Dr. Joseph Pachman for a peer review. Dr. Pachman reviewed the medical records provided by defendant. On March 9, 2007, Dr. Pachman spoke with Dr. White, who indicated that plaintiff had not obtained a psychiatric evaluation. Dr. White agreed that a psychiatric evaluation and a functional capacity evaluation would be helpful. Dr. Pachman concluded that, based on the medical evidence and the surveillance video, plaintiff's "description of her status appeared to be disproportionate to what would be expected." Dr. Pachman also concluded that the surveillance tape raised questions, but did not provide unequivocal information regarding plaintiff's functional capacity. He recommended a functional capacity evaluation and psychological testing. AR, at 00522-25.

Consistent with Dr. Pachman's recommendation, defendant arranged for a psychological evaluation by Rhonda Levy-Larson, an independent psychologist. Levy-Larson reviewed the claim form and obtained a medical history from plaintiff. Levy-Larson performed a brief mood inventory, the result of which was consistent with severe depression. However, this inventory did not have any measure of validity. Levy-Larson also performed a personality inventory. On this inventory, plaintiff "provided an invalid profile." Specifically, Levy-Larson explained that plaintiff "appeared

to have over reported and over amplified psychological and somatic problems and symptoms. She also appeared to have responded with defensiveness and denial, and might have tried to present a favorable picture of herself." Levy-Larson diagnosed plaintiff as suffering from an undifferentiated somatoform disorder. Although the personality profile was not completed in a valid manner, based on the interview, test findings, and records, Levy-Larson concluded that plaintiff "appears to have a somatoform disorder in which her over concern/extreme focus on her self-perceived somatic symptoms and physical limitations can cause clinically significant distress and/or impairment in social, occupational, or other areas of functioning. However such a condition does not entirely preclude work activity." Levy-Larson noted that plaintiff drove to her office and was in the office for almost five hours. AR, at 00432-38.

Also consistent with Dr. Pachman's recommendation, defendant arranged for a functional capacity evaluation (FCE) to be performed by NovaCare Rehabilitation. The FCE concluded that plaintiff's minimal overall level of work capacity falls in the sedentary range and that she can exert up to 10 pounds of force occasionally, but that she was unable to tolerate an 8-hour workday due to her need for rest breaks. The report also emphasized, however, that plaintiff's work level and tolerance for an 8-hour day were "significantly influenced by [plaintiff's] self-limiting and inconsistent behavior," and that the findings of the FCE represent "her minimal rather than her maximal ability." The report noted that plaintiff self-limited on 46% of the tasks she was asked to perform, which significantly exceeded normal limits and suggested that "psychological and/or motivational factors are affecting test results." AR, at 00439-49.

In a May 4, 2007, letter defendant informed plaintiff that her appeal was denied. The letter indicated that Appeals considered plaintiff's medical records from Dr. White, Dr. Seyfried, Dr.

Richard Easton, Dr. H.C. Song, Oakwood Hospital, and Henry Ford Hospital; plaintiff's MRI reports; Dr. White's affidavit; the disability claim forms; the surveillance report; Dr. White's June 12, 2006, response to Cobb's letter; plaintiff's social security disability benefits; the FCE; Dr. Pachman's report; and Levy-Larson's report. Based on this information, Appeals concluded:

> While we agree there may have been a period of time Ms. Barnes may have been precluded from work activity, the current records do not demonstrate she is less than sedentary. The records include findings on physical/clinical examination, surveillance and report, self-reported and observed activities of daily living, the Medical Consultant's opinion and expertise we further relied on, the FCE and the Psychiatric Independent Medical Examination, the claimant's own treating physician's opinion, the Employability Assessment that was conducted previously, Appeals finds the claimant has the functional ability to perform at least sedentary type work activity. There are no psychiatric issues that would preclude work activity. Therefore, Appeals finds the previous decision of July 7, 2006, to be correct and proper and there will be no further benefits payable.

AR, at 00369-72. Following this determination, plaintiff commenced her action in this Court.

C.    *Legal Standard*

The normal rules governing summary judgment under FED. R. CIV. P. 56 "are inapposite to ERISA actions and thus should not be utilized in their disposition." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). This is because a district court reviewing an administrator's decision in an ERISA case "may only consider evidence that was first presented to the administrator," *id*. at 618, while "Rule 56 is designed to screen out cases not needing a full factual hearing." *Id*. at 619. For this reason, "[t]o apply Rule 56 *after* a full factual hearing has already occurred before an ERISA administrator is . . . pointless." *Id*. Accordingly, a court should employ two steps in adjudicating a denial of benefits case under ERISA. First, with respect to the merits, a court should conduct a review "based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties'

arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator." *Id*. Second, the court "may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id*. The evidence contained in the administrative record which properly may be considered by a court includes any evidence submitted during the administrative appeals process. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).

Plaintiff seeks to recover benefits under § 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115; *see also*, *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). Where the plan does give discretionary authority, however, a court "reviews the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious standard of review.'" *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (citing *Firestone Tire*, 489 U.S. at 115)); *see also*, *Glenn*, 128 S. Ct. at 2348. Here, plaintiff does not dispute that the Plan grants the administrator discretionary authority, and that the arbitrary and capricious standard applies. Thus, in this summary judgment context, the court must "determine if there is any genuine issue of material fact whether the company's decision to deny benefits was arbitrary and capricious." *Id*. (internal quotation omitted).

The arbitrary and capricious "standard is extremely deferential and has been described as the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 367 F.3d 161, 172 (6th Cir. 2003). As the court explained in *Gismondi*:

> Under this deferential standard, we will uphold a benefit determination if it is rational in light of the plan's provisions. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. Indeed, we must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants.

*Gismondi*, 408 F.3d at 298 (citations and internal quotations omitted). In conducting this review, the Court may consider only the evidence in the administrative record. *See Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004).

D.    *Analysis*

Here, the Court should conclude that the administrator's decision to deny benefits was not arbitrary and capricious. As noted above, the administrator's decision must be upheld so long as there is some evidence to support its decision, even if the evidence could equally support a contrary conclusion.

Although there is evidence that plaintiff suffers from an objective back condition, the limitations caused by this back condition are not objectively verifiable, but based on plaintiff's subjective reporting. And there was significant evidence in the record from which defendant could conclude that plaintiff's subjective reporting was exaggerated. Dr. Pachman concluded that "[t]he medical information documented does not present a medical condition that would reasonably be expected to cause a functional restriction and/or limitation." AR, at 00523. Similarly, Cobb concluded that the medical evidence did not support plaintiff's subjectively reported limitations. AR, at 00634. Dr. White initially stated that he had no adjustments or additional limitations or

restrictions to add to Cobb's assessment, AR, at 00634, although he later averred that he misunderstood the question that was being asked. Further, both Levy-Larson and the FCE noted that plaintiff was self-limiting and not being forthright. AR, at 00436-38, 00439. And plaintiff's activities on the surveillance video were inconsistent with her claims that she was basically unable to perform any tasks. In these circumstances, defendant did not act arbitrarily or capriciously in rejecting plaintiff's subjective limitations, or Dr. White's conclusion which was based on those limitations. This left defendant with the medical opinions of Cobb, Levy-Larson, and Dr. Pachman, as well as the FCE which was strongly influenced by plaintiff's self-limiting behavior. These sources provided a rational basis for defendant to conclude that plaintiff was not disabled from performing any work under the terms of the Plan.

Plaintiff offers a number of arguments to contradict this conclusion. Each of these is without merit.

First, plaintiff argues that defendant was acting under a conflict of interest because it was both the administrator and payor of the plan, and that this conflict influenced defendant's decision to terminate benefits. It is clear that a conflict of interest exists where, as here, an insurance company both administers the plan and pays claims. *See Glenn*, 128 S. Ct. at 2349-50. It is equally clear, as plaintiff correctly notes, that the existence of a conflict does not change the applicable standard of review; that is, notwithstanding the existence of a conflict of interest the arbitrary and capricious standard nevertheless applies. *See id.* at 2350. Rather, the existence of a conflict is merely one factor to consider in conducting arbitrary and capricious review. *See id.* at 2350-51. The importance of the conflict as a factor will vary depending on the circumstances of the case, in particular the balance or imbalance of other factors, and the likelihood that the conflict actually

affected the administrator's decision.  *See id*. at 2351.

Here, the conflict of interest identified by plaintiff does not compel a finding of arbitrariness. The mere existence of a conflict does not, without more, establish arbitrariness.  *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007).[4]  There are no circumstances here "suggest[ing] a higher likelihood that [the conflict] affected the benefits decision."  *Glenn*, 128 S. Ct. at 2351.  The conflict itself–a single third-party administrator/payor–is not on its own considered substantial, *see Dunn v. GE Group Life Assurance Co.*, ___ Fed. Appx. ___, 2008 WL 3842929, at *4 (5th Cir. Aug. 18, 2008), and plaintiff has pointed to no procedural irregularities (other than those discussed and rejected below) suggesting that a conflict of interest affected defendant's decision, *see Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 582 (8th Cir. 2008).  As the Ninth Circuit has explained, "[t]he level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, or self-dealing, or of a parsimonious claims-granting history." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 959 (9th Cir. 2006).[5]  Plaintiff has provided no evidence of this type, nor has she sought discovery to develop such evidence.  On the contrary, plaintiff submitted a statement of no procedural challenge on September 10, 2007.  *Cf. Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 n.2 (6th Cir. 2005).  Thus, defendant's conflict of interest in

---

[4]Although *Cooper* was decided prior to the Supreme Court's decision in *Glenn*, *Glenn* arose from a Sixth Circuit decision and affirmed the Sixth Circuit's approach to conflicts of interest.  Thus, pre-*Glenn* Sixth Circuit caselaw remains relevant.

[5]As with the Sixth Circuit, the Ninth Circuit's approach to conflicts prior to *Glenn* comports with that decision, and thus *Abatie* remains good law.  *See Wilcox v. Wells Fargo & Co. Long Term Disability Plan*, ___ Fed. Appx. ___, 2008 WL 2873735, at *1 (9th Cir. July 23, 2008).

this case does not have substantial weight in the Court's review of defendant's decision.[6]

Plaintiff also argues that defendant selectively reviewed the medical evidence. While it is true that defendant discounted plaintiff's subjective complaints of pain and disability, there is no indication that defendant failed to review the entire medical evidence available. Each decision by defendant set forth the evidence that defendant considered in reaching its determination, and included the entire medical evidence submitted. AR, at 369-70, 405-06, 522. Nothing other than speculation supports plaintiff's assertion that defendant selectively reviewed the file.

Plaintiff next argues that defendant improperly dismissed the conclusions of Dr. White, and that none of the independent medical examiners contradicted his findings. The differences of opinion between plaintiff's treating doctors and the examining physicians does not render the administrator's decision arbitrary and capricious. As the Supreme Court has explained, nothing in ERISA "suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Thus, as the Seventh Circuit has explained, "[a]lthough [plaintiff's] treating physicians reached different conclusions as to her abilities, under an arbitrary and capricious review, neither this Court, nor the district court, will attempt to make a determination between competing expert opinions." *Semien v. Life Ins. Co. of N.A.*, 436 F.3d 805, 812 (7th Cir. 2006); *see also*, *Richards v. Hartford Life & Accident Ins. Co.*, 153 Fed. Appx. 694, 697 (11th Cir. 2005) ("In choosing between the conflicting opinions of the treating and reviewing physicians, this Court might have made a

---

[6]Plaintiff's claim that the independent medical reviewers likewise operated under a conflict of interest has little weight in light of the absence of any evidence that those reviewers had any financial stake in the outcome or other evidence that they were biased against plaintiff. *See Kalich v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005).

different choice," but the court "could not say that the administrator abused his discretion by relying on the independent reviewing physician's opinion[.]").  Further, defendant had good reason to discount the opinion of Dr. White.  Dr. White himself indicated that he would have preferred that plaintiff be treated by a physician specializing in chronic pain management.  AR, at 00522.  And although plaintiff suffers from an objectively verifiable back condition, the frequency, extent, severity, and duration of the pain caused by that condition is dependent on plaintiff's subjective reporting.  Dr. White's opinion that plaintiff was totally disabled was dependent upon plaintiff's subjective complaints.  As noted above, there was ample evidence on which defendant could rely to discount plaintiff's subjective complaints of disabling pain, and thus to discount Dr. White's opinion.

Nor is there anything "inherently objectionable about a file review by a qualified physician in the contest of a benefits determination."  *Calvert*, 409 F.3d at 296; *see also*, *Iley v. Metropolitan Life Ins. Co.*, 261 Fed. Appx. 860, 864 (6th Cir. 2008) (administrator did not act arbitrarily by relying on file review conducted by nurse).  As the Seventh Circuit has explained, there is no

> authority that generally prohibits the commonplace practice of doctors arriving at professional opinions after reviewing medical files.  In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation.  It is reasonable, therefore, for an administrator to rely on its doctors' assessments of the file and to save the plan the financial burden of conducting repetitive tests and examinations.

*Davis v. UNUM Life Ins. Co.*, 444 F.3d 569, 577 (7th Cir. 2006).

Plaintiff also contends that defendant's decision to terminate her benefits was arbitrary and capricious because the video surveillance does not detract from the validity of plaintiff's claim and does not establish that she is capable of performing a sedentary job.  Contrary to plaintiff's

argument, however, the video surveillance, a copy of which is included in the Administrative Record, does contradict plaintiff's subjective complaints of disabling pain. In her disability statements, plaintiff indicated that she was unable to perform any tasks, became totally exhausted after 5-10 minutes of activity, and could not drive. AR, at 00686-87. In her continuing disability statement, plaintiff indicated that she cannot perform any physical activities without experiencing exhaustion, bend forward at the waist, or walk up and down stairs. AR, at 00869, 00873. Yet on the video, plaintiff is seen driving, entering a health club and staying there for a period of time, bending to look under her car, and walking up stairs to go into her house. It is true that the brief time depicted on the video does not establish that she can perform sedentary work, but this argument is beside the point. The video does provide evidence that plaintiff's subjective complaints of disabling pain were exaggerated, providing defendant a basis to discount those complaints and Dr. White's opinion. Such reliance on the video surveillance, in conjunction with other evidence, does not establish arbitrariness. *See Tsoulas v. Liberty Life Assurance Co.*, 397 F. Supp. 2d 79, 98 (D. Me. 2005); *Onofrieti v. Metropolitan Life Ins. Co.*, 320 F. Supp. 2d 1250, 1254-55 (M.D. Fla. 2005).

Plaintiff next argues that defendant failed to consider the Social Security Administration's award of disability benefits, which had been sought at defendant's request. An award of social security benefits is a factor to be considered in reviewing defendant's decision; however, it is not binding on defendant or this Court. *See Calvert*, 409 F.3d at 295. While failure to consider a social security award may be arbitrary, there is no evidence that defendant did not consider that award. On the contrary, defendant specifically noted that the award was considered in rejecting plaintiff's appeal. AR, at 00369. Further, the social security determination was made much earlier in the process, and without benefit of the additional medical and surveillance evidence compiled by

defendant. Thus, the fact that defendant reached a contrary conclusion on different evidence does not show that its decision was arbitrary and capricious.

Plaintiff also argues that the FCE did not establish that she could perform a sedentary job. On the contrary, however, the FCE explicitly states that plaintiff can perform work at the sedentary level. AR, at 00439. The FCE does state that plaintiff cannot tolerate an 8-hour work day, but only because the testing "was significantly influenced by [plaintiff's] self-limiting and inconsistent behavior." *Id*. The tolerance noted by the FCE thus represented a minimum, not a maximum. The finding that plaintiff could perform work at the sedentary level, coupled with the evidence discounting plaintiff's complaints of disabling pain, provided a rational basis upon which defendant could conclude that plaintiff was capable of performing sedentary jobs.

Finally, plaintiff suggests that defendant's decision was improper because defendant itself initiated a review of her eligibility and proactively investigated the matter, and because defendant considered evidence which was not true–namely, that she had a business interest in a Florida bar and had traveled to Australia. With respect to the latter, however, it is clear that although these matters were noted and investigated, they played no role in the benefits determination. The investigator's report noted that it did not appear that plaintiff had any involvement in the business at the time of the investigation, and that it could not be determined if it was plaintiff who was referenced on a website about traveling in Australia. AR, at 00861. The matter was investigated because plaintiff's complaints of disability appeared excessive based on the medical evidence, and because there were problems with the physician's portion of the disability form, namely that it appeared not to have been filled out by the physician. There was nothing improper in this. The Plan explicitly provides that a claimant has the responsibility to provide continuing proof of disability. AR, at 00023.

The cases upon which plaintiff relies are inapposite. *Plummer v. Hartford Life Ins. Co.*, No. C-3-06-094, 2007 WL 43549 (S.D. Ohio Jan. 5, 2007), was decided under a *de novo* standard of review, rather than under the arbitrary and capricious standard. *See id.* at *12-*13. Thus, even if the facts of that case were otherwise identical to the facts of this case, the finding in that case that the plaintiff was disabled would provide little support for the claim that defendant's decision to terminate benefits was arbitrary and capricious. *Cf. Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998); *Bond v. Ecolab, Inc.*, No. 06-15027, 2007 WL 551595, at *6 (E.D. Mich. Feb. 21, 2007) (Zatkoff, J.). Further, the plan at issue in *Plummer* required only a finding that the claimant was unable to perform the substantial and material duties of her occupation, *see Plummer*, 2007 WL 43549, at *19, not that she was unable to perform any occupation as required under the terms of the Plan at issue here.

In *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356 (6th Cir. 2002), the court found that the administrator had acted arbitrarily and capriciously in terminating benefits on the basis of a transferable skills analysis by an independent expert. In that case, however, it was clear that the decision to terminate was based solely on that transferable skills analysis, and that the expert had not been provided any of the medical evidence other than a single functional capacity assessment. *See id.* at 362. Here, on the contrary, the record indicates that the medical experts received and considered the entire medical record, as well as the video surveillance, and that these materials formed the basis for their opinions. It is also apparent from the record that the decision to terminate benefits was based not only on the FCE, but also on the medical evidence, the video surveillance, and the opinions of the independent examiners. Thus, this case is distinguishable from *Spangler* in important, indeed controlling, respects.

Likewise, in *Moon v. Unum Provident Corp.*, 405 F.3d 373 (6th Cir. 2005), the administrator acted arbitrarily in denying benefits based on an independent examiner's disagreement with a treating physician's detailed, objectively supported opinion, which disagreement was premised on a single blood pressure reading. *See id.* at 381-82. Here, on the contrary, the independent examiners reviewed the entire record in reaching their conclusions, and the only contrary medical opinion of disability–that of Dr. White–was itself premised on plaintiff's subjective complaints of disabling pain. Thus, *Moon* likewise provides no authority for the proposition that defendant's decision in this case was arbitrary and capricious.

Finally, in *Chan v. Hartford Life Ins. Co.*, No. 02 Civ. 2943, 2004 WL 2002988 (S.D.N.Y. Sept. 8, 2004), the court did not conclude that the defendant had acted arbitrarily and capriciously in denying benefits. Rather, it merely denied the defendant's motion for summary judgment, concluding that in light of the record it was not clear whether the decision to terminate benefits was or was not arbitrary. *See id.* at *10. A determination that an administrator is not entitled to summary judgment in its favor does not amount to a determination that its decision was, in fact, arbitrary and capricious. And, in any event, under the Sixth Circuit's decision in *Wilkins* this Court does not engage in the type of summary judgment procedure employed in *Chan*.

A decision that is on point is the Sixth Circuit's recent decision in *Rose v. Hartford Fin. Servs. Group, Inc.*, 268 Fed. Appx. 444 (6th Cir. 2008). In that case, as here, the plaintiff reported significant limitations caused by her medical conditions, most notably fatigue caused by chronic fatigue syndrome and severe pain caused by fibromyalgia. *See id.* at 446. The administrator hired an investigator, as here, who obtained a surveillance video showing the plaintiff engaged in activities inconsistent with her self-reported limitations. *See id.* at 446-47. The plaintiff's continuing

disability statement repeated her claims of severe limitations. An independent medical examiner was retained to review the plaintiff's medical records. He spoke with one of the plaintiff's treating doctors, who indicated that the plaintiff could return to work. As here, however, the treating doctor later disavowed this statement and opined that the plaintiff could not return to work. *See id*. at 447. Again as with the instant case, the administrator conducted a vocational review. Based on that review, the surveillance video, and the independent medical evaluation, the administrator terminated the plaintiff's long-term disability benefits. *See id*. at 447-48. The plaintiff appealed, and a second independent medical review was conducted. That reviewing doctor contacted another treating physician, who opined that the plaintiff was disabled but admitted that all of the plaintiff's symptoms were subjective. Again, based on the medical review and surveillance video, the independent examiner concluded that the plaintiff was not disabled. *See id*. at 448.

In light of this record–strikingly similar to the facts in this case–the Sixth Circuit concluded that the administrator's decision to terminate benefits was not arbitrary and capricious. The court first found that the administrator's conflict of interest (as both administrator and payor) did not render the decision arbitrary because, as here, there was no evidence that the conflict affected the administrator's decision. *See id*. at 449. The court also found no problem with the administrator's rejection of the treating physicians' opinions of disability. The court noted that those opinions were based on plaintiff's subjective complaints, and were contradicted by the surveillance video and the opinions of the reviewing medical examiners, again as consistent with the facts of the instant case. *See id*. at 450-51. Specifically, the court found no issue with the fact that the reviewing physicians had conducted only a file review, and had not personally examined the plaintiff. *See id*. The court also rejected the plaintiff's argument that the administrator had placed too much emphasis on the

surveillance video, noting that the plaintiff bore the burden of presenting evidence of her disability, and that the only evidence of her disability was her subjectively reported limitations. Because of this, the court explained, "[w]hile the surveillance video may not, by itself, prove that Rose is capable of working forty hours a week," it did undermine her subjective limitations, which were the only evidence of disability presented. *Id*. at 452. Also relevant here, the court rejected the plaintiff's argument that the administrator had acted arbitrarily by requiring her to produce objective evidence of her functional limitations, as opposed to merely objective evidence of her underlying condition. *See id*. at 453-54. Finally, the court rejected another argument made by plaintiff here: that the administrator's decision to terminate benefits was arbitrary because there was no evidence of a change in the plaintiff's condition. The court explained that "no right to receive long-term benefits indefinitely accrued to [the plaintiff] upon [the administrator's] initial determination that she was entitled to such benefits." *Id*. at 454. The court further explained that "it would be illogical to prohibit an insurer from ever revisiting an insured's claim, particularly in light of newly discovered evidence calling into doubt an insured's disability," and that "such a rule might discourage insurers from promptly granting benefits in the first place." *Id*.

Although *Rose* is an unpublished decision, it is particularly persuasive here. *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) (although not binding, unpublished decisions may be considered for their persuasive value).[7] The facts of that case are nearly identical to the facts of this case, and the case discussed and rejected each of the arguments made here in reliance on binding Sixth Circuit caselaw. In light of the similarities between the two cases, the independent

---

[7] Pursuant to FED. R. APP. P. 32.1, a court may no longer "prohibit or restrict the citation of federal judicial opinions" issued after January 1, 2007, regardless of whether they are designated as "not for publication" or "non-precedential." FED. R. APP. P. 32.1(a); *see also*, 6TH CIR. R. 28(e).

analysis of each of plaintiff's arguments set forth above, and the evidence contained in the administrative record, the Court should conclude that defendant's decision to terminate plaintiff's long-term disability benefits was not arbitrary and capricious.

E.    *Conclusion*

In view of the foregoing, the Court should conclude that defendant's decision to terminate plaintiff's long-term disability benefits was not arbitrary and capricious. Accordingly, the Court should deny plaintiff's motion for judgment on the administrative record and should grant defendant's motion for entry of judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically,

and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/22/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 22, 2008.

s/Eddrey Butts
Case Manager